Our second case for this morning is United States v. Lavelle Watts. And when you're ready, Ms. Armour, we will hear from you. Good morning. May it please the court. My name is Molly Armour and I represent defendant appellant Lavelle Watts. And we briefed a number of issues in this case, and I would like to focus in this argument solely on the issue of the jury instructions. And with regard to the jury instructions, I'd like to focus on the prejudice that inured to Mr. Watts as a result of receiving a lesser included instruction that was inaccurate. I believe that there is ample evidence in the statutory language of Section 113 of this circuit's case law and abundant case law in other circuits that show that completed common law battery is in fact subsumed by the assault statute. But can I ask you, I mean, this jury was told not even to consider the lesser, I mean, the actual lesser included offense instruction that was given unless it concluded that it could not convict Mr. Watts of assault with a dangerous weapon, namely the chair. And so they don't reach the lesser offense. So how can the wording one way or the other of that instruction have made a difference? Well, I think in this circumstance, we're going to assume that the jury read the entirety of the instructions and parsed them thoroughly before going through. Yeah, I'm assuming that too. And they were told the first thing you've got to address is whether he committed the offense of assault with a dangerous weapon. They convict on that. And in reading these instructions, the jury would look to the lesser included instruction as part of all of the general instructions that were there and would look to the definitional instruction that was provided. And that definitional instruction only had a specific intent within it. There was no general intent that was a part of that definitional instruction. Wouldn't that usually help Mr. Watts? I mean, they actually have to go as far as finding the specific intent. They look at the evidence. There he is. You know, you can kind of see it on the video, clubbing this guy with the chair. And they decide that they're specific. Usually you would think that you would be fighting specific intent. Well, I think that this is a case that the kind of case that McCullough really deals with. And that is a circumstance where we never from the beginning, Mr. Watts never contested that he threw that chair or that that Joshua Sawyer. So what we have is a circumstance where the jury is going to sense and we recognize that the jury is going to sense that there was likely a wrong that was committed. And that's what McCullough really addresses in talking about why we provide lesser included offenses and why it is so prejudicial when they are not given. Do you really think this jury would have chosen the lesser offense that you're arguing for if that had been on the verdict form? In other words, it would have had to reject the offense that it did find, which is already a difficult counterfactual. Let's suppose they do. Do you think they would have preferred your offense? I do. And I think that there's evidence. I do. And I do think that there's factual support for that in the record. And I think we look to that. Where is that? To the judge's legal conclusion in assessing whether there was a lesser included offense. No, but look at the evidence. Where's the evidence that this is just a simple assault? So as the evidence that the judge assessed in determining that a reasonable jury, a rational jury, could indeed on the facts of this case, and that judge presided over this case, analyze the witnesses and analyze the arguments that was presented at that time, the trial court judge assessed hearing that, and being that a body that heard that evidence directly, that there was indeed a likelihood that a reasonable jury, a rational jury, could acquit Mr. Watts of the greater offense and convict him of the lesser. So we look through the court's lens in that regard. So there was a factual, a legal finding in that way assessing that evidence. And I think that there was a quite lengthy colloquy discussion on the record about where this evidence could have come from. But of course the judge finds that also in the light of the instruction that he gives saying don't even move to the lesser offense if you find that he committed the greater one. I mean the government actually asks, sees you as arguing that the jury should have had a greater chance for nullification. And I'm not going to say that you're going that far, but it's, you know. Well and I think again this is part of this analysis. There was an instruction that was given. It was a substantive instruction. It went to the mental state of an offense. He was entitled to receive this lesser included offense instruction. And it was inaccurate. It was inaccurate under the law. I'm not sure it was inaccurate. What, it's the intent part that you think is inaccurate? I do. I believe that a completed battery, a simple battery, should, is a part of a simple assault statute. And from the outset of this case. The common law distinguishes the two of course. The common law distinguishes that, but as this court found in Anderson, that the assault statutes under federal law are more expansive. We don't have a freestanding battery statute. And we do have, in this circumstance under section 113, we have two specific provisions that have no specific intent in the language. When we look to sections A4 and A5, both of them evince no specific intent. And so a lesser included offense, it was clearly simple assault, was part of this. And what we advanced from the beginning that this was a completed battery. And that, and this was part of the opening statement, that there was a chair. It did in fact hit Mr. Sawyer. But what the crux of the issue was, what was going on in the mind of Mr. Watts at that moment? Well that definition you used, defining simple assault, I found kind of confusing. And I think that it would have expanded the routes available for conviction by including intent to cause bodily harm or offensive harm. And that, the section that we sought to have included was a phrase meaning, assault means to apply force to the person of another in a manner that is at least offensive. The remainder of that I understand to be a part of a general concept about assault in terms of both intent to cause bodily harm and reasonable apprehension. So what we sought to add on to that was a completed battery instruction, which is at least offensive touching. Is there a statutory definition of dangerous weapon? I cannot recall as I stand here before you whether there is. I do believe that in this circumstance we took the definition of that from the section 2113 bank robbery statute, because there are no pattern instructions specific to section 113. And so we, I believe in this case, took the dangerous weapon from there. But I'm happy to reflect on that. There's no further questions at this time. I'd like to save the balance of my time for rebuttal. That would be fine. Mr. Storino. May it please the court, my name is Timothy Storino and I represent the United States of America in this case on appeal. The district court did not err by instructing the jury as to the definition of assault by using this circuit's definition of assault in the context of a bank robbery. It was an accurate statement of the law defining assault based on this circuit's precedent, specifically United States v. Valerie Smith and Rizzo, all of which this circuit cited in structuring its definition of assault, again in the context of a bank robbery. But more to your point, your honor, there was no prejudice that the defendant experienced from this jury instruction. As your honor points out, the jury instruction required the jury to first consider the charged offense, which was assault with a dangerous weapon in violation of 113.83. Well is there a definition of dangerous weapon? Your honor, there is not a statutory definition of dangerous weapon. What was the jury told? As to dangerous weapon? Yeah. Your honor, I don't have that jury instruction in front of me. From what I recall, the instruction of a dangerous weapon was put together through another jury instruction from bank robbery, as well as some of the case law, and specifically what I recall is United States v. Schoenberg, which is a Seventh Circuit case, which addressed this very statute, assault with a dangerous weapon. And from what I recall, it was that definition from that case and from the jury instructions that we put together. And of course, that jury instruction has not been challenged on appeal, and I don't even know if it was argued below. So this chair weighed about 44 pounds? Yes, your honor, the parties agreed to that. So there's in that sense, a stipulation that a 44 pound thing, if you will, got thrown at the guy's head, more or less. Yes, your honor, and that's what the evidence, virtually undisputed, showed. The statute seems really weird. I'm sorry, your honor? The statute seems really weird. I don't understand what a simple assault is. Your honor, a simple assault under 113A5 required only two elements, that an assault occurred, and that it occurred on federal property. And then what the court did was it took the assault instruction... I'm asking you, what is a simple assault? Your honor, I think a simple assault could be either an attempt to inflict injury or a threat to inflict injury with the intent to put that person in fear or apprehension of bodily harm. Well, that's, of course, the common law assault. But this simple assault embraces battery, right? I'm sorry, your honor? This simple assault in the statute includes battery. Your honor, according to the Second Circuit in Dulles, it does. Dulles specifically addressed that question, whether or not... Well, what's your... What do you think? I would say, no, your honor, not based on the Seventh Circuit case law, that this specific charge encompassed a completed battery. Well, how is... I don't understand. Where is battery prohibited? Well, your honor, this charge, I would argue, encompasses... I'm not asking you about this charge. I'm asking you, where is battery comprehended in this statute or there's no federal offense of battery, but there is one of common law assault. Is that what you're saying? Based on the cases I've read in the Seventh Circuit, your honor, yes. I don't see that a completed battery is considered under 113. Well, that's ridiculous. Assault, so paragraph six, assault resulting in serious bodily injury. Obviously, that's a battery, right? That's not in this common law assault. There's no touching with a common law assault, so you can't inflict a serious bodily injury. Yes, your honor. Right? Yes. So, six is assault comprehending battery. Now, what about five? And again, your honor, I don't see that five necessarily comprehends a battery based on the cases I've read. Well, not necessarily. You don't seem to have a clear idea of what this statute is about. So, the problem Judge Posner is pointing out is all of these subsections of A, with the exception of five, simply refer to assault in various ways. And then five suddenly ratchets it over to simple assault, maybe ratchets it back to simple assault. And so, you would have a statutory interpretation question, why should the word assault in subpart three mean something different from assault in subpart six? We know assault in subpart six is what we would, under the common law, call a battery because it results in serious bodily injury. And so, does the word assault in everything except five mean a kind of encompass battery as well? That's the interpretive question. And your honor, I'm perhaps not communicating myself well. I don't believe assault is different from A3 to A5. I don't think the insult... Then you have to say it encompasses battery. I mean, in this case, whether it's just, I mean, maybe he was saying, oh, I was just trying to scare Sawyer by throwing the chair at him. And in fact, he throws the chair with intent to commit battery. That's not quite the same thing as actually committing battery. It's assaulting with intent to commit some other offense. And maybe in the end, it's much ado about nothing. But you do have this statute to deal with, and it may have some effect on the appropriate instructions to give to the jury. And that was his argument below, that he committed some sort of assault, but he did not intend to impose bodily harm. He intended something else. And the court said, well, that is a very close call. And that was not necessarily the court's view of it, which said in the jury instruction conference at page 334, that there was enough of a factual basis for that to occur. And the government's position, of course, is that there was not a factual basis for that. That in the first instance, the defendant was not entitled to this, lesser included, because he swung a chair in a crowded courtroom, two to three feet away from the victim, and then celebrated afterwards, screaming, now we're even, and telling the Deputy United States Marshals afterwards that I cracked him in the head, I socked him in the head. So the government, that is a... Before you sit down, tell me why it's reasonable to give him five years for the act of throwing a chair at somebody. Your Honor, I think based on what I just said, the conduct that occurred in a courtroom, the defendant sought to take advantage of the court system. He said that a wrong was committed against me. He filed a civil lawsuit. When that didn't go his way, he stood up and he made a mockery of that court system. And he took a chair and he swung and he struck it directly against the head of a police officer. And when you take that conduct, which again, as I said, he celebrated afterwards, and you compare it to his criminal history, this is not the first time this man has had problems with the law. He has two convictions... They were mostly driving problems though, aren't they? Granted, Your Honor, 46 of his 59 criminal history points were for driving convictions. Even without... Not the greatest record. Even without those, Your Honor, he still fell within the highest criminal history category with 13 points. Two convictions for resisting arrest, one for contempt. All of those were from 2009. Older convictions for burglary, possession of a controlled substance. I think what it showed is that this person had a very difficult time with law enforcement, had a very difficult time with adhering his actions to the law, and therefore 60 months was reasonable. So a dangerous weapon, it doesn't have to be a weapon, right? Correct, Your Honor. It doesn't have to be. And again, I... I don't understand why a simple concept such as assault and battery cannot be defined by Congress. I would agree, Your Honor. It's a totally incompetent statute. It's Mr. Reno's fault. I totally agree with that, Your Honor, and I will take shoulder the blame for as much as I can. But I believe here there was no prejudice to the defendant as a result of these jury instructions. And unless the court has any more questions for me, I'd ask the court to affirm the defendant's conviction and sentence. Apparently not. Thank you very much. Anything further, Ms. Armour? Yes. Briefly, so clearly does this statute include battery. It includes a completed battery. Except part five or including part five? The part referring to simple assaults. Simple assault, that is the crux of our argument, that it must include a battery. So all, you think all of the assaults in 113A... Yes. ...are just using the word assault in a different, specialized, congressionally defined way to include common law battery as well. Yes, and I'm sure we all take issue with the way that Congress has constructed this statute. But I think it is clear that case law and other circuits have done analysis of the various common law and statutory construction. And this court has also ruled in other contexts that a spitting in a similar kind of statute is considered a battery. A battery is assumed by other assault statutes. I see that as relatively non-controversial. I do think with regard to the issue of prejudice, I don't think that the order of instructions returning to Your Honor's earlier query... See, what's so strange about it, if you look at assault with intent to commit murder, that could be just an attempt, right? Yes, I believe it could, Your Honor. In common law terms, right? I believe it could. Okay. I mean, if someone... I mean, suppose you shot at someone and missed. Would that be an assault under A1? I think it perhaps could be. And I think the issue here is what was inside the mind of Mr. Watts at the time he threw that chair and the argument that we had below and that which was well heard by the trial court and found that a reasonable jury could, in fact, conclude, based on the facts that we presented and the argument that we presented, that a jury could acquit him of the greater effects. But the jury didn't, though. I mean, it seems to me this jury was asked to decide what was in his mind. And contrary to his position, it decided he meant to hit Officer Sawyer with the chair. And, you know, I don't... Did they have to conclude that? Probably not, but they seemed to certainly have concluded that. Well, it wasn't entirely contrary to his position, because the position that we advanced was never instructed to the jury. The position that we advanced from the moment of opening statement, where the intent of the defendant was referenced 10 times, where we talked about simple assault, the jury never received that instruction. So we promised something to the jury, that because we went down a rabbit hole of statutory construction... I don't understand. Your conception, how would you have explained simple assault to the jury? An unconsented touching. What? An unconsented touching. Something that doesn't require a specific intent to injure. Because once you start talking about... Well, I don't understand. What is it you think he was trying to do? We think Mr. Watts threw the chair. He threw the chair in anger. He threw the chair in response to the jury's verdict. But he threw the chair at someone. He threw the chair in the direction of someone, and I take issue with the government's characterization that it was virtually undisputed that he threw it at his head. In fact, only one witness said that it was at his head. Well, if you throw a chair at a person... Right. You could be trying to provoke them. You could be trying to get their attention. Trying to provoke? I don't understand that. You could be trying to touch them. No one would care in the slightest what the intent was. What if you shoot a person? Would you make the same argument if he shot Sawyer? Would you say, well, we don't know. Maybe he didn't want me to do that. He didn't shoot Sawyer. What would you say in that case? If he shot, then we have other statutes that... Let me finish. Oh, I apologize. Would you say in a case in which if he'd shot Sawyer, would you say that the jury should have been given a lesser-included instruction and say, well, he did shoot at him, but maybe he wasn't aiming or something. Is that what you would say, Laurie? I believe that we go through the lesser-included offense case when we look at McCullough. It sounds ridiculous when someone points a gun at someone and shoots them to offer a lesser-included instruction. Well, we actually have a case like that in the circuit. And it is a bank robbery case where a gun was fired in the circumstance of a bank robbery. It did not hit someone. And there was argument about whether a simple assault... Of course the gun can be... Of course you could fire a gun over a person's head. I'm saying if you aim at a person, fire, and hit him, is he entitled nevertheless to a lesser-included instruction in which he says, well, I didn't mean to kill him? If there's a factual basis in the record that shows enough that a rational jury could acquit him of the greater... Well, in my example, no, right? But we don't have the context of what else was happening in that moment. Did someone pull his arm back? Was he confused about what he saw? There are other facts beyond just the mere fact of that action that come to bear on that decision. Well, I don't agree. All right. Well, we appreciate your assistance to your client. You were appointed, were you not? I was. Thank you. Thank you very much. Thanks as well to the government. We will take the case under advisory.